OPINION
{¶ 1} Raymond Fredrick Oborne appeals from a judgment of the Montgomery County Court of Common Pleas, which convicted him of possession of crack cocaine after he had entered a no contest plea. The trial court had previously overruled Oborne's motion to suppress evidence against him.
 {¶ 2} On October 22, 2002, Oborne was stopped by Dayton police officers and found to have crack cocaine in his possession. The details of Oborne's encounter with the police officers will be discussed in greater detail under the assignment of error. Oborne was charged with possession of cocaine. He pled not guilty to the offense and filed a motion to suppress the evidence against him, including his statements to the police, on the ground that the stop of his car and search of his person had not been supported by probable cause or any other basis. The trial court conducted a hearing on the motion to suppress on January 9, 2003. The trial court overruled the motion to suppress. Oborne subsequently changed his plea to no contest. He was sentenced to five years of probation and one hundred hours of community service. He was also ordered to pay court costs and to complete a chemical dependency assessment, and his drivers license was suspended for six months.
 {¶ 3} Oborne raises one assignment of error on appeal.
 {¶ 4} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE RECOVERED AS A RESULT OF THE ILLEGAL SEARCH OF HIS AUTOMOBILE AND PERSON."
 {¶ 5} Oborne claims that the "police lacked a reasonable suspicion that [he] was armed and dangerous to justify searching him or his car."
 {¶ 6} As a preliminary matter, we note that there is no evidence that the police searched Oborne's car. Thus, we will disregard this portion of his argument and address only whether the police were justified in searching his person.
 {¶ 7} Police Officer Dennis Murphy testified to the following version of events. At around 6:00 p.m. on October 22, 2002, he and his partner had been driving eastbound on Laura Street in Dayton when a Cadillac passed them going westbound. As a routine part of their patrol, the officers ran the Cadillac's license plate number, and they discovered that the plate was registered to a station wagon. As the officers made a U-turn to get behind the Cadillac, Murphy saw it make a left turn onto Main Street without signaling. Once they were behind the car, Murphy saw the Cadillac make a right turn into a convenience store parking lot, again without signaling. The officers pulled in behind the Cadillac and activated the cruiser's overhead lights.
 {¶ 8} Murphy observed the driver of the Cadillac, Oborne, moving back and forth quite a bit in the car, which caused him to be concerned that Oborne was hiding a weapon. The area was known for drug activity and prostitution, and that fact made Murphy more concerned about the danger of weapons. Murphy stepped out of the cruiser and kept an eye on Oborne while his partner approached the passenger side of the car and removed a female passenger to the cruiser. After ascertaining that there were no warrants for the passenger's arrest, she was asked to leave. Murphy then approached Oborne, who had his left hand under his left leg and was still moving his left shoulder around. Oborne stuttered and perspired as Murphy talked with him, and Murphy concluded that Oborne was attempting to conceal a weapon. Murphy asked Oborne to step out of car.
 {¶ 9} Oborne opened the car door very quickly and jumped to his feet while making a "sweeping motion" with his left hand. As Oborne did this, Murphy saw a "white pebble" on the blue seat, and Oborne's left hand swept it to the ground outside the car. Murphy immediately recognized the pebble as crack cocaine. Oborne then shoved his right hand into his right pocket. Fearing that Oborne was pulling a weapon, Murphy restrained Oborne's hand inside the pocket while his partner came around to handcuff Oborne. As they began to pat him down, the officers asked Oborne if he had anything they should be aware of, and Oborne revealed that he had two rocks of crack cocaine in his left pocket. Oborne was then taken into custody.
 {¶ 10} "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms (1977),434 U.S. 106, 111, 98 S.Ct. 330, 333, fn. 6. A Mimms order may be given "even without suspicion of criminal activity." State v. Evans,67 Ohio St.3d 405, 407, 1993-Ohio-186. Because Oborne does not refute the alleged traffic and license plate violations, there is no question that the police officers were justified in asking him to step out of his car.
 {¶ 11} As soon as Oborne stepped out of his car, a rock of crack cocaine came into plain view of Murphy, who immediately recognized it to be contraband. The presence of cocaine gave the officers grounds to arrest Oborne and to search him incident to that arrest. See UnitedStates v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467.
 {¶ 12} The trial court properly overruled Oborne's motion to suppress evidence.
 {¶ 13} The judgment of the trial court will be affirmed.
FAIN, P.J. and POWELL, J., concur.